SMITH ET AL. *v.* HARGRAVES.

[75 South.  545, Division B.]

ABATEMENT AND REVIVAL.  *Continuance against successor in interest. Process.*

Where, during the pendency of a suit, one of the defendants, a necessary party to the suit, died and the court entered an order reviving the suit against her heirs, a judgment without service of process upon such heirs or their voluntary appearance, was without authority, until the heirs of the deceased were properly brought in.

APPEAL from the chancery court of Copiah county.
HON. P. Z. JONES, Chancellor.

Suit by R. F. Hargraves against John B. Smith and wife, in which the wife died during the pendency of the suit and it was revived against her heirs. From a judgment for plaintiff, defendant appeals.

The fact are fully stated in the opinion of the court.

*Fulton Thompson, R. N. & H. B. Miller* and *R. H. & J. H. Thompson,* for appellant.

That the final decree is utterly void and will have to be reversed in behalf of the children of the original defendant, Mary Ann Smith, deceased, because they were given no notice whatever of the suit and remanded for further proceedings against them is too plain for argument. The principal is universal and no judgment, decree or order of court is valid or binding on a party who has had no notice of such proceeding against him. *Jack* v. *Thompson,* 41 Miss. 49, and divers other cases in our reports following it.

*H. J. Wilson,* for appellee.

It is interesting to note how that counsel for appellant have entered appearance for the heirs of Mary Ann Smith, deceased, and they are joined in the appeal of John B. Smith and ask that the decree be reversed as to their interests and the record discloses some curious facts in this connection. On the 30th day of September, 1912, the chancellor granted a decree reviving the case in their name, and they were "made parties to said suit as defendants."

In the same decree the defendants were all allowed to amend their answer and cross-bill.

It must be apparent from the reading of this order of the court that the order was entered at the instance of John B. Smith and his attorneys and the heirs of

Mary Ann Smith were intended to be joined as cross-complainants.

The record does not show any amendment to the answer and cross-bill, but, in this connection I desire to call the court's attention to the following paragraph appearing in the cross-bill, of defendants: "Cross-complainant shows to the court and charges that the contract sued on herein and the deed aforesaid being procured by fraud, duress and deceit as aforesaid, are wholly void, that R. F. Hargrave forced himself into possession of defendants' farm and used it all the year 1912 to this time and is due defendants for the fair rental value thereof, which is five hundred dollars per year." This paragraph was evidently added to the original cross-bill after permission to amend the same. The cross-bill was originally filed on January 15th, only six days after the deed of conveyance was delivered to Hargrave. The truthfulness of the paragraph above referred to was impossible at the time the cross-bill was filed.

The decree itself recites that the hearing was on certain pleadings, including answer to cross-bill. In the absence of proof to the contrary this recital in the decree must be taken as true. The answer of cross-defendant, to the cross-bill is not in the record, and the issue made by the pleadings can only be inferred from the decree finally rendered by the chancellor. Therefore, it is not affirmatively shown by the record that the decree was rendered "entirely outside of and in disregard of the pleadings."

The rule of universal application with reference to courts of general jurisdiction is that the action of the court below is presumed correct unless error is made manifest by the record. *Yale* v. *Lancaster,* 44 Miss. 413; *Toady* v. *Lucas,* 43 Miss. 337; *Pass* v. *McRea,* 36 Miss. 143; *Steadman* v. *Holman,* 33 Miss. 550.

114 Miss.—44

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Hargraves, filed a bill in the chancery court of Copiah county against John B. Smith and Mary Annn Smith to enforce the specific performance of a contract to convey certain lands situated in said county, alleging that John B Smith and wife, Mary Ann Smith, were indebted to the Alliance Trust Company and to the Merchants' & Planters' Bank, and that the said lands were incumbered to secure said debts, and that on or about the 5th day of January, 1912, the defendants approached the complainant to pay off said indebtedness and executed and delivered a contract agreeing, in consideration of the payment of said debts, amounting to two thousand five hundred seventy-six dollars, and two hundred dollars in cash by the complainant, that the defendants would convey the said lands, and alleging that complainant paid the Merchants' & Planters' Bank said money, and had forwarded to the Alliance Trust Company the amount due, and tendered the defendants the amount due under its contract but that the defendants refused to convey the land. Within a few days after the bill was filed the complainant went to the defendants, and through some method procured the execution of a deed to said lands. Within a few days after the execution of the deed the defendants filed an answer to the bill, and made their answer a cross-bill, alleging that the contract to convey the lands was procured by fraud, that they did not know that it was a contract to convey lands, but that Hargraves represented that it was security to secure the payment of money advanced by him by way of loans to the defendants to pay the above debts, and alleging further that since the filing of the bill Hargraves came to them and intimidated them into signing the deed. They allege that they were ignorant negroes, unable to read and write, and wholly ignorant of court proceedings and the meaning and effect of summonses, and it was not their intention to make a contract to sell

their lands, and that they signed the deed under duress, being threatened with prosecution, and prayed that the said instruments be cancelled and held for naught.

After the answer and cross-bill was filed, Mary Ann Smith died, and an order was entered by the court reviving the suit in the name of her heirs, and directing that process issue to bring the heirs into court, making them parties defendant; but no process was ever served upon the heirs to bring them into court, and it does not appear that they ever appeared as parties in court, or had any knowledge of the revivor in their names. In this state of the case the cause came on for hearing by the court on oral testimony. It appears in the testimony that Hargraves, the complainant, went to the home of the defendants to make arrangements with them with reference to the said matters, and that some kind of a contract was drawn up and signed, but not acknowledged. In a few days thereafter Hargraves carried a justice of the peace out to the home of the defendants to take their acknowledgment, and the defendants refused to acknowledge the signing of the deeds, but Hargraves and the justice of the peace remained some time, discussing and arguing the question with the defendants, and during the course of these conversations the justice of the peace states that John Smith admitted signing the instrument which he claimed had been read over to him in his presence by Hargraves. They went away, and Hargraves wrote up an acknowledgment, which the justice signed, certifying that the defendants acknowledged that they signed the paper. It further appears that the negroes were dissatisfied with the matter, and went to the banker with whom they had done business, discussed the matter, and in the discussion defendant John Smith stated to Hargraves, "I am a negro and you are a white man, but you stole my land," to which statement Hargraves did not reply. It further appears, during the illness of Mary Ann Smith, one of the defendants and the wife of John

Smith, that Hargraves, accompanied by a number of men, went to the premises of Smith and accused him of having instigated a plot to assassinate Hargraves, and warned him, if anything came of that, that he would be dealt with in a proper (?) manner; this at a time when the wife was in practically a dying condition. She died, and at her burial the husband, John Smith, was arrested on some pretext, carried to the county jail, and incarcerated in the county jail. The proof shows that the property conveyed was worth much more than the price which Hargraves paid for it, and there are numerous circumstances in the record which indicate that a good deal of intimidating tactics were used upon the old negro with reference to this deal, and tending to show that the old negro's contention was correct. There is other testimony in the record which tends to show that the complainant acted in good faith so far as the deal was concerned, but the complainant admits going to the defendants' premises and charging them with a plot to assassinate him, or do him personal injury, and admits stating to him that, if any harm came to Hargraves, Smith could be held responsible.

The decree of the court recites that the cause came on for hearing on the bill of complaint, answer and cross-bill, and answer to the cross-bill; but no answer to the cross-bill appears in the record, and we are unable to say what allegations were denied and what were admitted, if there was an answer to the cross-bill. But, treating the answer as denying all the allegations of the cross-bill, we are unable to see how the chancellor could dispose of the case, and adjudicate that the deed was valid and binding on the defendants after the death of one of the defendants, who was amittedly the owner of the property, without having her heirs brought in to further defend the suit. The adjudication would be without authority until the heirs of the deceased were properly brought in. The decree does not recite that they appeared, and it seems to be ad-

mitted in the briefs that they were not parties to the proceedings. We think they were necessary parties, and that they must either be brought in by process or must voluntarily appear, and therefore the judgment is reversed, and the cause remanded for further proceedings.

*Reversed and remanded.*